**UNITED STATES of America, Plaintiff,**

v.

**Vincenzo OLIVERI, Defendant.**

**No. CRIM H–98–424.**

United States District Court,
S.D. Texas,
Houston Division.

Sept. 26, 2001.

U.S. Marshal, U.S. Probation, Pretrial Services, Houston, TX, Hays Gorey, David Calone, Dept. of Justice, Antitrust Division, Washington, DC, for U.S.

Larry Richard Veselka, Smyser Kaplan, et al., Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court is defendant Vincenzo Oliveri's Motion to Dismiss Indictment (Docket Entry No. 4). For the reasons stated herein, Oliveri's motion will be denied without prejudice.

On May 7, 1998, a federal grand jury sitting in the Southern District of Texas issued a subpoena to Oliveri directing him to appear and testify on June 2, 1998. (Subpoena to Testify Before Grand Jury, attached as Exhibit A to Oliveri Mem.)[1] Oliveri, a citizen of Italy, was served with the subpoena in Houston while there on business. (Oliveri Mem. at 1–2)

The original return date of the subpoena, June 2, 1998, was adjourned twice, the second time until July 29, 1998. (Indict-

ment ¶ 3) On July 24, 1998, through counsel, Oliveri notified the United States Department of Justice, Antitrust Division (the "Division"), of his intent not to appear before the grand jury on the appointed date. (Letter from A. Hoffinger to H. Gorey, July 24, 1998, attached as Exhibit B to Oliveri Mem.) Oliveri's stated reasons for non-appearance were "lack of jurisdiction, the potential for adverse consequences abroad, as well as general comity, equity and fairness concerns." *Id.* Oliveri failed to appear before the grand jury on July 29, 1998. (Indictment ¶ 4) Consequently, the grand jury indicted Oliveri for criminal contempt of court in violation of 18 U.S.C. § 401. *Id.*

Oliveri has not been arraigned on the contempt charges, and has not otherwise appeared before this court in connection with those charges. Oliveri was apparently not in the United States when the grand jury issued the indictment against him, and has remained outside the United States since that time. (Division Opp. at 5; Letter from A. Hoffinger to H. Gorey, July 6, 2001, attached as Exhibit ·3 to Division Opp.) In fact, it appears that although he would like to conduct business in the United States, Oliveri is purposely absenting himself from the United States in order to avoid arrest and arraignment on the contempt charges. (Oliveri Mem. at 9 ("As a result, Mr. Oliveri's ability to travel to the United States . . . [has] been adversely affected."))

In his Motion to Dismiss Indictment, Oliveri argues that the indictment against him is defective for two reasons. First, Oliveri argues that failure to comply with a grand jury subpoena, as opposed to a court order, does not constitute contempt of

---

1. In September of 1997 Grand Jury No. 97–3 began investigating a possible conspiracy in the marine construction industry, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. (Indictment ¶ 2, attached as Exhibit D to Oliveri Mem.) The grand jury sought Mr. Oliveri's testimony in furtherance of that investigation. *Id.* ¶ 3.

court. Second, Oliveri asserts that the indictment is based upon an invalid subpoena. Oliveri takes the position that the grand jury was attempting to obtain testimony regarding activities over which it had no jurisdiction.

In response, the Division argues that, prior to Oliveri's arraignment or other appearance before the court, this court lacks jurisdiction to adjudicate Oliveri's motion. In the alternative, the Division argues that, to the extent this court does have jurisdiction, the circumstances of this case dictate that the court should not exercise it. Moreover, the Division argues that Oliveri is barred from contesting the jurisdiction of the grand jury in a motion to dismiss because to preserve such a claim, a motion to quash should have been filed prior to the return date of the subpoena. Finally, the Division asserts that criminal liability for contempt does not require violation of a court order. Instead, according to the Division, mere failure to comply with a grand jury subpoena is sufficient.

The court need not address any of the parties' substantive arguments because, assuming the court has jurisdiction to rule on the merits of Oliveri's motion, the court refuses to exercise that jurisdiction in this case.

■ It is within the discretion of the district court to rule on the sufficiency of an indictment prior to arraignment. *Hughes v. Thompson*, 415 U.S. 1301, 94 S.Ct. 829, 830, 39 L.Ed.2d 93 (1974). Over thirty years ago the United States Supreme Court, in *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), recognized the "fugitive disentitlement" doctrine. In *Molinaro* the Court dismissed the appeal of a defendant who failed to surrender himself to state authorities after his bail was revoked. *Id.* at 498, 90 S.Ct. 498. The Court explained "[w]hile such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." *Id.* at 498–99, 90 S.Ct. 498. Later, the Fifth Circuit, following *Molinaro,* conditionally dismissed an escaped appellant's appeal, explaining that the court had cause to believe the appellant would not follow the court's decree unless it was favorable to him. *United States v. Shelton,* 482 F.2d 848, 849 (5th Cir.1973) (per curiam).[2]

In the years since *Molinaro,* the fugitive disentitlement doctrine has come to signify the unwillingness of courts to waste time and resources exercising jurisdiction over litigants who will only comply with favorable rulings of the court. *See United States v. Shapiro,* 391 F.Supp. 689, 693 (S.D.N.Y.1975) (describing this concept as "mutuality"); *see also United States v. Delagarza–Villarreal,* 141 F.3d 133, 136 (5th Cir.1997) (citing *Molinaro* and other Fifth Circuit cases for the proposition that "an appeal may be dismissed if the appellant becomes a fugitive from justice while his appeal is pending"); *see generally Degen v. United States,* 517 U.S. 820, 116 S.Ct. 1777, 1781, 135 L.Ed.2d 102 (1996) (describing the general policies underlying the fugitive disentitlement doctrine). As stated by the Court of Appeals for the District of Columbia in the context of a fugitive's civil suit to enjoin enforcement of an arrest warrant, "appellants have attempted to invoke only half our jurisdiction, i.e. the winning side." *Dawkins v. Mitchell,* 437 F.2d 646, 649 (D.C.Cir.1970).

---

**2.** The *Shelton* court recognized that the court's power to dismiss a fugitive's appeal could be justified on various grounds, such as disentitlement, as discretion to refuse to hear a claim where the litigant indicates he will only comply with the court's favorable orders, or as lack of a justiciable controversy. *Shelton,* 482 F.2d at 849. The court ultimately relied most heavily upon the second of these rationales in reaching its decision. *Id.*

Although the fugitive disentitlement doctrine is often invoked during the appellate process, it also applies to pretrial motions made by fugitives in the district courts. *See, e.g., United States v. Eagleson,* 874 F.Supp. 27, 29–31 (D.Mass.1994).

 The central issue is whether this court should exercise its discretion and rule on the merits of Oliveri's motion. As an initial matter, the court finds that Oliveri is in fact a "fugitive." As explained by the Second Circuit,

> The intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return.

*United States v. Catino,* 735 F.2d 718, 722 (2d Cir.1984) (citations omitted). Oliveri is aware of the charges pending against him in this district and is purposely absenting himself from the United States to avoid arrest and arraignment on the charges. Oliveri apparently desires to conduct business in this country, but cites the charges against him as curtailing his ability to do so. (Oliveri Mem. at 9) Oliveri is therefore a fugitive. *Cf. Eagleson,* 874 F.Supp. at 29 (D.Mass.1994).

It appears that Oliveri is attempting to obtain the benefit of a favorable ruling from this court without risking the burdens that may flow from an adverse ruling. If this court were to decide, on the merits, not to dismiss the indictment against Oliveri, such a ruling would have no effect on Oliveri because he could remain outside the jurisdiction of this court. On the other hand, if the court were to dismiss the indictment against Oliveri, he would obtain a significant benefit from this court at no risk to him. Absent some special circum-stance, or overriding policy concern, this court refuses to bestow such a benefit on Oliveri. Moreover, the court notes that reaching the merits of a fugitive's pretrial motion may encourage others in the same position to take flight from justice.

Accordingly, Oliveri's Motion to Dismiss Indictment (Docket Entry No. 4) is **DENIED without prejudice.** Oliveri may reurge his motion after he has submitted to the jurisdiction of the court.